UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:11-cv-81080-MIDDLEBROOKS/JOHNSON

DIANE PFISTER, individually and on
Behalf of all others similarly situated,

    Plaintiff,

v.

PROFINITY, LLC, a Nevada limited liability
company d/b/a Profinity, FAMILY SAVINGS,
LLC, a Florida limited liability company,
MARTIN TOHA, MARK BEACHAM, PAUL
QUINTAL and RANDI SWATT,

    Defendants.
_____/

## THE CORPORATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND, ALTERNATIVELY TO DISMISS COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

Defendants, PROFINITY, LLC ("Profinity") and FAMILY SAVINGS, LLC ("Family") (collectively, "the Corporate Defendants"), by and through their undersigned counsel and pursuant to Rules 8(a)(2), 12(b)(6) and 56, Fed. R. Civ. P., and Rules 7.1(C) and 7.5, S.D. Fla. L.R., hereby move for summary judgment[1] against the Plaintiff, DIANE PFISTER ("Plaintiff" or "Pfister") and, alternatively, to dismiss the Complaint for failure to state a claim upon which relief may be granted, and in support thereof state as follows:

---

[1] In support of their Motion for Summary Judgment, the Corporate Defendants submit the Affidavit of Paul Quintal and the Declaration of George Miller, Jr., Esq. as Exhibits "A" and "B," respectively. The Affidavit of Paul Quintal is referenced as (Aff. Quintal ¶__). The Declaration of George Miller, Jr., Esq. is referenced as (Decl. Miller ¶__).

## INTRODUCTION

Pfister sues six defendants, two LLCs and four individuals, for damages under the Telephone Consumer Protection Act of 1991, 47 U.S.C.A. §227 ("TCPA"). She also seeks to have a class certified pursuant to Fed. R. Civ. P. 23 in order to proceed as a class action under the Class Action Fairness Act, 28 U.S.C. 1332(d). (Compl. ¶3).

Pfister complains that she received on her cellular telephone a single text message from Profinity, which she did not authorize. (Compl. ¶¶16-17). She asserts that that single text message referred her to a phone number owned and operated by defendants. (See id. ¶18). Pfister alleges that because she did not provide prior conspicuous or express consent to receive unsolicited text messages on her cellular telephone, defendants violated Section 227(b)(1)(A) of the TCPA. (See id. ¶25) She identifies no other text message allegedly sent by any Defendant or any other individual who allegedly received a text message from any defendant. Instead, Pfister conclusorily alleges that "Defendants sent identical or substantially similar SMS text messages to a list of cellular telephone numbers." (See id. ¶21).

## SUMMARY OF ARGUMENT

### *The Corporate Defendants are Entitled to Summary Judgment.*

Because neither Profinity nor any other defendant sent the text message to Pfister and because neither Profinity nor any other defendant authorized that the text message be sent to Pfister, but, instead, specifically directed the entity that apparently sent the text message to Pfister <u>not</u> to send text messages on its behalf, the Corporate Defendants are entitled to summary judgment.

The affidavits filed in support of this motion establish that the Plaintiff's allegations are incorrect and that the Corporate Defendants are entitled to summary judgment as a matter of law. The undisputed material facts supporting summary judgment are as follows:

- Neither Profinity nor any other defendant sent any SMS text message to Pfister, including that single text message referenced in paragraph 16 of the Complaint.

- Neither Profinity nor any other defendant authorized that any SMS text message be directed to Pfister, including that single text message referenced in paragraph 16 of the Complaint.

- The only text message referenced in the Complaint was not sent to Pfister directly or with the knowledge and consent of any defendant.

- The SMS short code referenced in that single text message sent to Pfister is not owned or operated by any defendant.

- No defendant sent or authorized to be sent an SMS text message identical or substantially similar to that referenced in paragraph 16 of the Complaint to anyone, let alone to a "list of cellular telephone numbers."

- The sender of the SMS message to plaintiff was specifically not authorized to send any SMS message to anyone on behalf of any defendant.

### *Alternatively, the Complaint Must be Dismissed.*

In the alternative, the Court should dismiss the Complaint on the following grounds.

1. The Complaint intermingles factual and legal allegations against all six defendants, without distinguishing any act(s) or conduct by any one of the six.

2. The Complaint fails to state a claim upon which relief can be granted under the standards established by Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007) (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). This Complaint is comprised almost entirely of legal conclusions, generalities, and extracts from the statutes upon which Plaintiff relies, rather than well-pled factual allegations.

3. The Complaint fails to state allegations to justify a class action, including, but not limited to:

  A. The Complaint is as consistent with the conclusion that the damages of the purported class is less than $5 million as with the conclusion that the damages of the class exceed $5 million as required for class action jurisdiction. The Complaint alleges in paragraph 28: "Upon information and belief, there are hundreds, if not thousands of members of the Class..." If "hundreds,", the damages are substantially less than $5 million.

  B. The Class definition requires a determination of the merits of the TCPA claim intertwined with whether the matter should proceed as a class action.

## MEMORANDUM OF LAW

### I. Legal Standards

Summary judgment under Rule 56 is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.

A complaint must be dismissed for failure to state a claim if no set of facts could be proven that would support a claim for relief. Frazier v. Alexandre, 434 F. Supp. 2d 1350, 1357 (S.D. Fla. 2006); Bracewell v. Nicholson Air Servs., 680 F. 2d 103, 104 (11th Cir. 1982). A party must do more than merely label his or her claims. Bentley v. Bank of America, 773 F. Supp. 2d 1367 (S.D. Fla. 2011); Frazier, 434 F. Supp. 2d at 1357.

### II. Undisputed Material Facts

Profinity is a marketing company that works with business to consumer marketers to help them increase their profits. (Aff. Quintal ¶2). It is Profinity's policy to exclude use of SMS messaging from any advertising program or activity in which it is involved. Profinity does not

4

contract with any partner who engages in SMS text unless that partner can unequivocally provide Profinity with proof that it has been given EXPRESSED CONSENT by the consumer to receive such SMS text. (See id. ¶13; Decl. Miller ¶5).

In or about August 2011, Profinity negotiated with an entity named Moonlight Drive Marketing, LLC ("Moonlight") for Moonlight to promote Profinity's services by means of a warm transfer advertising campaign on inbound call programs, not SMS messaging. (Aff. Quintal passim; Decl. Miller passim & ¶¶4-5). Profinity's Executive Vice President, Paul Quintal, principally negotiated with Moonlight. (Aff. Quintal ¶5). Moonlight initially submitted to Profinity a proposed contract that specifically contemplated that Moonlight would send SMS messages to its database and that message would contain a click to call link that would connect with a toll-free number assigned to Moonlight. (See id. ¶6 & Ex. B). Through discussions and negotiations, Profinity insisted that all references to SMS messaging be removed from the agreement, making it clear that Profinity did not authorize SMS messages, consistent with the policies of Profinity. (See id. ¶¶3, 6-9).

On August 8, 2011, Mr. Quintal requested that Profinity's authorized house counsel, George Miller, Jr., Esq., review an Insertion Order and Terms and Conditions ("Insertion Order") with Moonlight. (Decl. Miller ¶3, Ex. A). Although Moonlight had eliminated any reference to SMS messages in the general description of the "Campaign" following conversations with Mr. Quintal, Paragraph 3 of the fourth draft of the Insertion Order still contained references to "SMS message creatives." (See id.; Aff. Quintal ¶7). In accordance with Profinity's policy and because the parties' deal was a warm transfer deal, Mr. Miller struck the reference to SMS text messages. (Decl. Miller ¶5 & Ex. B). Moonlight accepted Mr. Miller's changes and returned the Insertion Order as revised, without reference to SMS text messaging, to Profinity for execution. (See id.

5

¶6 & Exs. C, D and E). The final Insertion Order executed by Profinity and Moonlight contains no reference to SMS messaging. (Aff. Quintal Ex. A).

Profinity thereafter understood that Moonlight began marketing for a warm transfer campaign as contracted for in the Insertion Order. (Decl. Miller ¶7). Accepting the allegations of the Complaint as true, Moonlight nevertheless apparently proceeded to send at least one SMS message to Pfister. The Corporate Defendants only became aware that Moonlight had used SMS text messaging after receiving notice of this lawsuit. (See id. ¶8).

No one with Profinity initiated or sent the SMS message to Pfister. (Aff. Quintal ¶11). No one with Profinity authorized the SMS message. (See id.). The phone number listed in the SMS message sent to Pfister, as alleged in paragraph 16 of the Complaint, is neither owned nor operated by any defendant. (See id. ¶10). Defendant, Family Savings, had no involvement whatsoever with the Insertion Order with Moonlight or with the SMS messages. (See id. ¶15).

## III. There is No Issue of Fact or Law; the Corporate Defendants are Entitled to Summary Judgment.

The Corporate Defendants are entitled to summary judgment because they neither sent the text message to Pfister nor was the text message sent on their behalf.

Pfister claims that the Corporate Defendants have violated a provision of the TCPA which makes it unlawful for anyone "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system... to any telephone number assigned to a...cellular telephone service..." (Compl. ¶19, citing 47 U.S.C. §227(b)(1)(A)(iii)). According to Pfister, Defendants sent a text message to her without her consent. It is undisputed that no defendant ever sent the text message at issue to Pfister. There can therefore be no question but that the Corporate Defendants cannot be held directly liable under the TCPA.

6

Nor can the Corporate Defendants be held vicariously liable for any action by Moonlight in sending a text message to Pfister. It is true that liability under the TCPA may exist not only for the person or entity making the call, or text message, but also for the entity or person "on whose behalf" the call is made. See generally, Charvat v. EchoStar Satellite, LLC, 676 F. Supp. 2d 668 (S.D. Ohio 2009); Charvat v. Farmer's Ins. Columbus, 897 N.E. 2d 167 (Ohio 2008). Here, unlike any reported vicarious liability case under the TCPA, not only did Profinity not authorize Moonlight to use SMS messages or remain silent in that regard, it specifically refused to authorize Moonlight to send text messages (SMS messages) and declined to sign any agreement which referenced the use of SMS messages.

In Charvat v. EchoStar Satellite, LLC, the district court collected and analyzed the cases that addressed the question of whether a hiring party is responsible for a violation of the TCPA committed by the hired party. 676 F. Supp. 2d at 673-79. EchoStar Satellite focused on whether the hiring party retains the "right to control the manner or means" by which a particular job is completed, as opposed to whether someone is formally labeled as an independent contractor. See id. at 674- 675. In so doing, it applied common law agency principles. See id.

Among the other TCPA opinions analyzed by EchoStar Satellite were Worsham v. Nationwide Ins. Co., 772 A. 2d 878 (Md. Ct. Spec. App. 2001); Hooters of Augusta, Inc. v. Nicholson, 537 S.E. 2d 468, 472 (Ga. Ct. App. 2000); Charvat v. Farmer's Ins. Columbus, 897 N.E. 2d 167 (Ohio Ct. App. 2008); Lary v. VSB Financial Consulting, Inc., 910 So. 2d 1280 (Ala. Civ. App. 2005); and United States of America v. Dish Network, LLC, 2010 WL 376774 (C.D. Ill. Feb. 4, 2010). In Charvat v. Farmer's Insurance Columbus, the appellate court affirmed summary judgment and found no genuine issue of material fact as to whether calls were placed on behalf of Farmers Insurance because the "agent" had the sole authority to solicit

business and how to do it. In Lary, the court likewise found summary judgment properly entered for the hiring party where there was no evidence that any person under the hiring party's direct control played any part in the decision to send the unsolicited fax advertisement in question. By contrast, the Hooters and Worsham courts found the issue of control was a jury question. 676 F. Supp. 2d at 674-677. Like Lary and Charvat v. Farmer's Ins. Columbus, EchoStar Satellite found that no reasonable jury could find that EchoStar retained the right to control the manner or means by which the Retailers in that case carried out their contractual duties. Supra at 677.

Under general principles of agency, the principal is only responsible for the acts of the agent within the scope of authority extended to the agent. An exception is when the apparent authority of the agent extends to the act in question. Apparent authority, however, is to be based on the act of the principal, not any act of the agent. Madio Group, Inc. v. Shores, 897 F. Supp. 1408, 1411 (M.D. Fla. 1995). In the instant case, there is no allegation and there will never be any evidence that Profinity or any other defendant took any act which could have created for Diane Pfister the impression that anyone was authorized to send a text message on behalf of Profinity or any other defendant. Instead, the evidence is directly to the contrary – Profinity at all times informed Moonlight that it was *not* authorized to use SMS messaging.

Moreover, Profinity had no control over the method of advertising or the means by which Moonlight carried out their activities. The Insertion Order (contract) between Moonlight and Profinity provided that Moonlight would "promote advertisers' program on inbound call programs (such as call-in surveys and fulfillment programs) by playing an audio advertisement and connecting interested parties to advertisers' program. Reporting will be no less than daily. Maximum 1,000 calls, targeting 100-200 calls per day." (Aff. Quintal Ex. A). Within these broad parameters, Moonlight had discretion to determine the inbound call programs to be used,

the persons to whom the material would be directed, the frequency of promotion, the time of promotion, and within the broad parameters quoted above, the number of advertising events to take place. Although Profinity reserved the right to approve the "teaser scripts" to be utilized, it had virtually no other control.

In sum, not only did Profinity not have the right to control the activities of Moonlight, like the hiring party granted summary judgment in EchoStar Satellite, Profinity specifically directed Moonlight not to use SMS messaging. Profinity did not authorize Moonlight to send SMS messages on its behalf; it clearly directed Moonlight not to send such messages. Profinity did not even know that Moonlight had employed text messages in violation of the parties' agreement until this lawsuit was filed. The Corporate Defendants are entitled to summary judgment under the circumstances.

### IV. In the Alternative, the Complaint Must be Dismissed.

#### A. The Complaint Fails to State a Claim for Relief Because it Intermingles Factual and Legal Allegations Against All Six Defendants, Without Distinguishing Any Act or Conduct by Any One of the Six.

The Complaint asserts that it is against six defendants, two limited liability companies and four individuals. Yet, the Complaint fails to differentiate the six defendants. In fact, the Complaint complicates the issue by referring in paragraph 3 to "either defendant ('further, as set forth below, Plaintiff is a citizen in a state different from either defendant.')." The word "either" differentiates between two objects or persons, not between six.

In Bentley v. Bank of America, 773 F. Supp. 2d 1367 (S.D. Fla. 2011), Judge Dimitrouleas dismissed a claim under the TCPA for "improperly lumping together defendants." Judge Dimitrouleas stated as follows:

> ... the Court finds that to the extent Plaintiff attempts to assert a claim against Defendants under 47 U.S.C. §227(b)(1)(A) in Count III, such a claim is dismissed without prejudice for improperly lumping together Defendants such that

9

Defendants do not have fair notice of the precise nature of the violation that is claimed against them.

Id. at 1374-75. For the same reasons enunciated in Bentley, the Complaint should be dismissed.

### B. The Complaint Fails to State a Claim Upon Which Relief Can Be Granted Under Twombley and Iqbal.

The United States Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007), and the Court's more recent decision in Ashcroft v. Iqbal, 129 S. Ct. 1937, 17 L.Ed.2d 1868 (2009), altered the manner in which courts are to analyze a Rule 12(b)(6) motion to dismiss. Quoting from Twombley, Judge Dimitrouleas observed as follows in Bentley:

> While a Complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations...a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

773 F. Supp. 2d at 1370.

In addition to lumping together of the defendants with no specific allegations against any one of them, the instant Complaint consists essentially of formulaic recitations tracking the language of the appropriate statute, but containing very little in the way of factual allegations specifying the actions of the defendants or, particularly, any one of the defendants.

### C. The Complaint fails to state allegations to justify a class action, including, but not limited to:
**(1) The Complaint is as consistent with the conclusion that the damages of the purported class is less than $5 million as the Complaint is consistent with the idea that the damages of the class exceed $5 million. The Complaint alleges in paragraph 28: "There are hundreds, if not thousands of members of the Class\* \* \*. If "hundreds," the damages are substantially less than $5 million.**

Under the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA"), federal courts only have original jurisdiction over class actions in which the amount in controversy exceeds $5,000,0000. 28 U.S.C. §1332(d)(2). In C&E. Inc. v. Friedman's Jewelers, Inc., the 2008 WL

10

64632 (S.D. Ga. Jan. 4, 2008), the district court addressed whether removal of a TCPA claim was proper under the CAFA. As here, the complaint alleged that defendants had violated the TCPA "by sending a 'mass transmission' of unsolicited facsimile advertisements to 'hundreds, if not thousands' of recipients." 2008 WL 64632 at *1. The Court relied on Lowery v. Alabama Power Co., 483 F. 3d 1184, 1211 (11th Cir. 2007), an Eleventh Circuit decision finding defendants "unable to meet the onerous burden of establishing the $5,000,000 amount in controversy" and noted as follows:

> Like the instant case, Lowery involved a class action for unspecified damages. Upon removal, the defendants contended, *inter alia*, that the amount in controversy could be derived from considering the number of plaintiffs and the nature of their claims. The defendants reasoned that in order to reach the jurisdictional threshold, each of the roughly 400 plaintiffs need only recover $12,500.00. The Circuit Court found this rationale too speculative to support a finding of jurisdiction. Id. at 1220-21 (noting also that the defendants' notice of removal contained no document clearly indicating that the aggregate value of the plaintiffs' claims exceeds the threshold amount).

See id. at *2 (citing Lowery, 483 F.3d at 1220-21). Following Lowery, C&E rejected conclusory assumptions that because the plaintiff sought $1,500 per violation and alleges that faxes were sent to "hundreds, if not thousands" of recipients, aggregate claims could possibly exceed $5 million. See id. C&E stated as follows:

> While 'hundreds if not thousands' could conceivably amount to 3,334 violations, it could just as reasonably be interpreted to mean 1,500 persons alleging 3,000 total violations, or $4,500,000 in damages. There is no evidence in the removal documents suggesting which result is more likely.

As in C&E, Pfister alleges that, "[u]pon information and belief, there are hundreds, if not thousands, of members of the Class such that joinder of all members is impracticable." (Compl. ¶28). She then conclusorily "alleges that the claims of individual class members in this action are well in excess of $5,000,000 in the aggregate …and that the total number of members of the

11

proposed Class is greater than 100..." (See id. ¶3). Such allegations are wholly insufficient to state a claim under the CAFA and the Complaint must be dismissed.

### (2) The Class definition requires a determination of the merits of the TCPA claim intertwined with whether the matter should proceed as a class action.

The Complaint alleges in paragraph 26 that the class consists of:

> All persons in the United States and its Territories who received one or more unsolicited text messages by or on behalf of Profinity from four years prior to the filing of this complaint until the present.
>
> Excluded from the Class are Defendants and their officers and directors, legal representatives, successors or assigns, and any person or entity related to, affiliated with, or controlled by the Defendants.

This type of class description has been rejected in TCPA cases. Courts reject this approach because it defines the class in such a way that the key issue on liability determines membership in the class, thus improperly triggering a preliminary merits determination. Sadowski v. Med1 Online, LLC, 2008 WL 489360 (N.D. Ill. Feb. 20, 2008) (finding alleged class imporper); GM Sign, Inc. v. Franklin Bank, 2007 WL 4365359 (N.D. Ill. 2007) and Kennard v. Elec. Data Sys. Corp., 1998 WL 34336245 at **4-5 (Tex. Dist. Ct. Oct. 23, 1998) (unpublished) (denying class certification).

WHEREFORE, Defendants, PROFINITY, LLC ("Profinity") and FAMILY SAVINGS, LLC ("Family"), request the Court to grant summary judgment in their favor. In the alternative, Defendants request the Court dismiss the Complaint for failure to state a claim upon which relief may be granted and/or for failure to plead with sufficient particularity. Defendants further request any other relief this Court deems just and proper.

Respectfully submitted,

By: **/s/ Sidney A. Stubbs**
Sidney A. Stubbs, Esq.
Florida Bar No. 095596
E-mail: sstubbs@jones-foster.com
Joanne M. O'Connor, Esq.
Florida Bar No: 0498807
E-mail: joconnor@jones-foster.com
Scott G. Hawkins, Esq.
Florida Bar No. 460117
E-mail: shawkins@jones-foster.com
JONES, FOSTER, JOHNSTON & STUBBS, P.A.
505 South Flagler Drive; Suite 1100; P.O. Box 3475
West Palm Beach FL 33402-3475
Telephone: (561) 659-3000
Facsimile: (561) 650-0422

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2011, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

By: **/s/ Sidney A. Stubbs**
Sidney A. Stubbs

13

## SERVICE LIST
## PFISTER v PROFINITY, ET AL.
## CASE NO. 9:11-cv-81080 MIDDLEBROOKS/JOHNSON
### United States District Court, Southern District of Florida

Stefan Coleman, Esquire
law@stafancoleman.com
1072 Madison Avenue
Suite 1
Lakewood, NJ 08701
Telephone: 877-333-9427
Facsimile: 888-498-8946

Joel Elkins, Esquire
jelkins@weisslurie.com
Jordan L. Lurie, Esquire
jlurie@weisslurie.com
Weiss & Lurie
10940 Wilshire Boulevard
23rd Floor
Los Angeles, CA 90024
Telephone: 310-208-2800

p:\docs\26781\00001\pld\1bv2656.doc