## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

Case No. 11-81080-CIV-MARRA/JOHNSON

DIANE PFISTER, individually and on behalf of )
all others similarly situated,                )
                                               )
                          Plaintiff,           )
                                               )
          vs.                                  )
                                               )
PROFINITY, LLC, a Florida limited liability    )
company, d/b/a Profinity; FAMILY SAVINGS,      )
LLC, a Nevada limited liability company;       )
MARTIN TOHA; MARK BEACHAM,                     )
PAUL QUINTAL; RANDI SWATT,                      )
                                               )
                          Defendants.          )
_____       )

**CLASS ACTION**

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, AND
ALTERNATIVELY TO DISMISS
COMPLAINT**

**[Plaintiff's Alternative Request for
Denial or Continuance of Summary
Judgment Pursuant to Fed. R. Civ. P/
56(d) and Supporting Declaration filed
concurrently]**

Plaintiff Diane Pfister responds as follows to the Corporate Defendants' Motion for Summary Judgment, and Alternatively to Dismiss Complaint ("Motion").

## I.     INTRODUCTION

Plaintiff's Complaint alleges that Defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq.,* by sending unsolicited text messages to Plaintiff and the class.  Defendants Profinity, LLC ("Profinity") and Family Savings, LLC (collectively, "Defendants") have moved for summary judgment solely on the ground that they are not liable under the TCPA because the text messages at issue were sent by Defendants' third-party marketer, Moonlight Drive Marketing ("MDM"), and that Defendants instructed the third-party marketer not to send text messages on Defendants' behalf.  Motion at 2-3.

Plaintiff requires additional facts in order to fully oppose Defendants' Motion and has concurrently filed a Motion and Declaration pursuant to Fed. R. Civ. P. 56(d).[1]  This Court, however, can and should deny Defendants' Motion at this time, *even if Defendants' version of the facts is accepted as true*, because Defendants are vicariously liable for the actions of their third-party marketer under the TCPA, as a matter of law.

As set forth below, the TCPA is a strict liability statute, and under §227(b)(1)(A)(iii) of the TCPA, sellers, such as Profinity, are liable for calls that they "made" or caused to happen.

[1]Defendants filed their Motion at the very earliest stages of the case, as their initial response to the Complaint, and prior to any formal discovery.  The Motion raises factual issues involving the application of agency principles and the activities of a third-party marketer not identified in the Complaint and includes two declarations and 39 pages of documents.  Plaintiff has diligently served discovery on the factual issues raised by the Motion but will not receive responses before her opposition to the Motion is due.  This brief deals with the legal question of whether Defendants are strictly liable under the TCPA for marketing conducted on their behalf by a third-party.  In the event that the Court finds that Defendants are not strictly liable under the TCPA and that agency principles apply, Plaintiff requests the opportunity to obtain the discovery necessary to respond to the specific facts set forth in the Motion, as provided by Fed. R. Civ. P. 56.1(d).

Further, sound policy consideration compel the conclusion that sellers, such as Profinity, are liable for telemarketing done on their behalf by third-party marketers and that, on balance, liability should be placed on the seller who benefits from the practice and is in the best position to police and prevent it.

Defendants' alternative Motion to Dismiss also should be denied.  The Complaint adequately states a claim for violation of the TCPA at least as to Profinity.  To the extent that the Complaint is deficient in any way, Plaintiff respectfully requests leave to amend.

## II.    FACTUAL SUMMARY

### A.    Summary of Plaintiff's Allegations

Plaintiff received an unsolicited text or SMS message from Profinity.  SMS (abbreviation for "short message service") or text messaging is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.  An SMS message is directed to a cellular telephone through the use of the user's phone number.  When the SMS message is received, the recipient's cellular telephone alerts the recipient that a text message has been received.  Since most people carry their cellular telephone with them and check their incoming text messages shortly after receiving them, this type of communication is very effective.  ¶¶14-15.[2]

On or around August 23, 2011, Plaintiff's cell phone rang, indicating that a text message was being received.  The "from" field of the transmission was identified cryptically as "42227" which Plaintiff later learned was an abbreviated telephone number known as an SMS short code.

The SMS number is owned and operated by Defendants.  When someone calls the phone

---

[2]Citations to "¶__" refer to Plaintiff's Complaint.

number, an automated voice message system offers the caller numerous vouchers and coupons. If the caller presses the number 1 for more details, the caller automatically is connected to a Profinity salesperson.  ¶18.

　　　For purposes of their Motion, Defendants do not dispute that Plaintiff received a text message or that the TCPA imposes liability for unsolicited text messages.  The sole basis for Defendants' Motion is that they are not vicariously liable under the TCPA.  Defendants' Motion fails as a matter of law because Defendants *are* vicariously liable for text messages sent by their third-party marketer.

### B.　　Defendant's "Undisputed Material Facts" Are Not Undisputed

　　　Plaintiff notes that Defendants' Motion is procedurally defective in that there is no Separate Statement of Material Facts as required by Local Rule 56.1(a).  However, even the "undisputed material facts" listed in their Motion (Motion at 3) all are disputed by Plaintiff and are specifically the areas of inquiry of outstanding discovery:

| Defendants' "undisputed material facts" | Plaintiff's Response |
| --- | --- |
| • Neither Profinity nor any other defendant sent any SMS text message to Pfister, including that single text message referenced in paragraph 16 of the Complaint. | Disputed.  Subject of outstanding discovery requests.  *See* Plaintiff's Alternative 56(d) Motion filed concurrently herewith. |
| • Neither Profinity nor any other defendant authorized that any SMS text message be directed to Pfister, including that single text message referenced in paragraph 16 of the Complaint | Disputed.  Subject of outstanding discovery requests.  *See* Plaintiff's Alternative 56(d) Motion filed concurrently herewith. |
| • The only text message referenced in the Complaint was not sent to Pfister directly or with the knowledge and consent of any defendant. | Disputed.  Subject of outstanding discovery requests.  *See* Plaintiff's Alternative 56(d) Motion filed concurrently herewith. |
| • The SMS short code referenced in that single text message sent to Pfister is not owned or operated by any defendant | Disputed.  Subject of outstanding discovery requests.  *See* Plaintiff's Alternative 56(d) Motion filed concurrently herewith. |

| • No defendant sent or authorized to be sent an SMS text message identical or substantially similar to that referenced in paragraph 16 of the Complaint to anyone, let alone to a "list of cellular telephone numbers" | Disputed.  Subject of outstanding discovery requests.  *See* Plaintiff's Alternative 56(d) Motion filed concurrently herewith. |
| • The sender of the SMS message to plaintiff was specifically not authorized to send any SMS message to anyone on behalf of any defendant | Disputed.  Subject of outstanding discovery requests.  *See* Plaintiff's Alternative 56(d) Motion filed concurrently herewith. |

On this ground alone, Defendants' Motion should be denied.

## III.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

### A.   Profinity "Made" the Calls Under the TCPA

In 1991, Congress enacted the TCPA in an effort to address certain telemarketing practices widely considered invasive of consumer privacy.  Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful for anyone "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . .  cellular telephone service, . . . ."

Any issue of statutory interpretation must begin with the plain language of the statute. The Merriam-Webster Dictionary defines the word "make" as "to cause to happen or to be experienced by someone."[3]  Dictionary.com defines "make" as "to cause to exist or happen; bring about."[4]  Funk and Wagnalls defines the word as "to cause to happen to or be experienced by someone."[5]  Similarly, the Oxford English Dictionary defines the word to mean to "cause

---

[3]Available at http://www.merriam-webster.com/dictionary/make.

[4]Available at http://dictionary.reference.com/browse/make.

[5]Available at http://www.britannica.com/bps/dictionary?query=make.

4

(something) to exist or come about; bring about."[6]

Where the applicable definition of a word is apparent, there is no legitimate justification to look beyond that definition or to construct a new one. According to the ordinary, common sense and plain meaning of the statutory language, where, as here, Profinity created a situation that resulted in telemarketing calls to market its products or services, Profinity is considered to have "made" those calls. Profinity does not need to physically place the call to be liable under the TCPA. Profinity is the entity that caused the process of making the telemarketing calls to begin. The TCPA's plain language imposes liability on those who "made" calls - language that encompasses situations where a seller does not itself physically place the call but nevertheless causes the call to occur. By entering into an arrangement, whether with an employee or third-party, that results in the use of telemarketing to market its products, the seller, in this case, Profinity, has "made" such telephone calls in violation of the TCPA.

Moreover, Profinity benefitted from, or stood to benefit, from the text messages. It is undisputed that, as alleged in the Complaint, when the recipient of the text message calls the number on the text message and attempts to receive the advertised benefit, the caller is transferred to a live Profinity representative. Under these circumstances, there is little doubt that Profinity "makes" the calls in violation of the TCPA.

Any other interpretation of §227(b)(1)(A)(iii) is statutorily untenable and would eviscerate the TCPA's strict liability requirement. The Eleventh Circuit has held unequivocally that the TCPA is a strict liability statute.[7] As a strict liability statute, the TCPA does *not* require

---

[6]Available at http://oxforddictionaries.com/definition/make?region=us.

[7]*See, Alea London Ltd. v. American Home Serv., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) ("The TCPA is essentially a strict liability statute …."); *also Penzer v. Transportation Ins. Co.* 545 F.3d 1303, 1311 (11th Cir. 2008), citing *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA.*, 314 F. Supp. 2d 1094, 1103 (D. Kan. 2004) (finding liability for erroneous unsolicited faxes

a seller to have "control" over, or even "knowledge" of, the telemarketing calls to impose liability on the seller. Sellers may be found liable for calls made without willfulness or knowledge by either the seller itself or by a third-party acting on the seller's behalf. By importing agency principles and arguing that it can avoid liability in circumstances where it lacks "control," Profinity advocates creating a test that would require consumers and regulators to prove that a seller actually intended to make a violative telemarketing call. Such a reading disregards the language and structure of the statute.

Indeed, if a violative call is made willfully or recklessly, the TCPA penalizes such behavior by imposing treble damages. 47 U.S.C. §227(g)(1) (2010). Profinity's reading, in which a party may be liable under the TCPA only if it "directs" or "controls" violative conduct, would require *all* violations of the TCPA to be "willful" or "knowing," rendering superfluous the statute's treble damages provisions. The federal common law agency principles that Profinity would import into the statute would strip out this strict liability standard without justification and are contrary to the intent of the law.

Second, proof of agency simply is not a requirement of the TCPA. There is no language in the TCPA that expressly or impliedly requires a formal agency relationship between the seller and the physical caller. For that reason alone, Profinity's self-serving interpretation should be rejected. If Congress had intended for common law agency standards to determine an entity's liability for violating the TCPA, it would have stated so.

For the reasons set forth above, *Charvat v. EchoStar Satellite, LLC*, 676 F. Supp. 2d 668 (S.D. Ohio 2009) and the other cases cited therein relied upon by Defendants are incorrectly

---

because "The TCPA is essentially a strict liability statute"). *See also CE Design Ltd. v. Prism Business Media, Inc*., 2009 U.S. Dist. LEXIS 70712 at *8-9 (N.D. Ill., Aug. 12, 2009) ("The TCPA is a strict liability statute but the court has discretion to award treble damages for a willful or knowing violation.").

decided and, in any event, not controlling for purposes of resolving Defendants' Motion. Moreover, in those cases, the courts focused exclusively on whether the specific facts alleged supported a finding of agency liability and did not address the "make" language of §227(b)(1)(A)(iii) and Plaintiff's arguments here. Accordingly, *Echostar* and similar cases cited by Defendants are neither relevant nor dispositive.

      **B.    Profinity's Interpretation Would Grant Sellers Broad TCPA Immunity**

Sound policy considerations, as set forth below, further buttress denying Defendants' Motion as a matter of law.

Profinity's proposed reading of the TCPA would be a roadmap for sellers on how to use outside telemarketers to violate the TCPA and make money – and get away with it. Any seller could enter into (or hire affiliates who would themselves enter into) agreements with outside dealers to market the seller's products or services. Such agreements would feature boilerplate contractual provisions that require general "compliance with the law" and "independent" marketing efforts by the dealer. By ignoring or disclaiming any ability to control the dealer's conduct, the seller could then reap the financial benefits of the dealer's telemarketing activities with virtually no risk of TCPA liability, regardless of how many illegal telemarketing calls are made to market the seller's products. This is an absurd result, and this Court should reject Profinity's attempt to impose such a broad-based immunity from the TCPA's requirements. Moreover, Profinity's approach would harm companies who are competing fairly, abiding by the law, and taking responsibility for their marketing instead of focusing on setting up marketing strategies to avoid liability.

If the Court were to adopt Profinity's interpretation, a seller such as Profinity, could avoid all TCPA liability simply by contracting with outside entities to sell its services and then turning a blind eye to the telemarketing done by these entities. A seller's simple ploy of

creating and maintaining an attenuated relationship with the marketer that induces sales of the seller's products and creates a revenue stream running directly to the seller should not insulate the seller from liability. A simple disclaimer indicating a lack of involvement with specific marketing practices would shield the seller from any of responsibility for the system it created. Such results are an absurd nullification of the statute. Not coincidentally, this is exactly Profinity's business model, and it has resulted in significant profit to Profinity and significant harm to consumers who have been plagued by unwanted text messages from Profinity's marketer.

Further, using agency law to define the contours of TCPA liability would cause sellers to devote resources to the formalities of their relationships with outside sales entities, rather than to the TCPA compliance of the third-party marketers. It would encourage sellers to structure their relationships with outside entities to promote the sending of unwarranted text messages and actively discourage sellers from requiring their outside sales entities to comply with the TCPA, thereby permitting unwanted text messages to proliferate.

### C.     Profinity's Interpretation Harms Consumers

Profinity's approach to the law, although favorable to sellers and telemarketers, would strip away the enforcement remedies granted to consumers and enforcement agencies and open the doors to an avalanche of illegal telemarketing. Entities seeking to promote the goods and services via third parties who physically dial the calls will flood consumers with unsolicited text messages which disguise the true identity of the entity making the calls. Complaints from consumers will then be summarily dismissed by the entity on whose behalf the text was made, claiming that they are shielded from liability because it did not make the call. Consumers who receive violative calls should not have their protections denied simply because the seller, in this case Profinity, used a third-party to expand its customer base and then disclaims responsibility

8

for that party's bad acts.

According to Profinity, sellers who do not control their marketers should be immune, and consumers and enforcement agencies could bring TCPA claims against only the outside dealers who physically placed the calls.  However, because of the transient and unstable nature of many of these telemarketing dealers, such suits would likely give consumers little or no redress or relief from illegal calls.  At the end of the day, the seller benefits from the customer signed up by its dealer's illegal telemarketing call; the dealer receives a commission or other rewards; and aggrieved consumers are left to bring a TCPA suit against a telemarketer that he or she may not even be able to identify.

The approach advocated by Profinity is particularly problematic in the telemarketing realm, because telemarketing dealers that flagrantly disregard the TCPA's requirements are frequently insolvent, judgment-proof, and/or internationally-based.  Pursuing these entities is often futile and a waste of resources.  Indeed, in this case, Plaintiff is informed that the third-party marketer, MDM, is a start-up with insufficient resources to satisfy any judgment.  Shifting the burden of identifying wrongdoers from the beneficiary of the illegal call to those harmed by it makes no sense and undermines the purposes and intent of the TCPA.

In addition, Profinity's agency law analysis would have the consumer's remedy turn entirely on the nature of the relationship between the seller and the entity that actually placed the call—a relationship that is completely opaque to the consumer.  To a consumer, the inconvenience and harassment of receiving an illegal telemarketing text are the same, regardless of the whether the entity placing the call qualifies as the seller's legal agent.  Profinity's attempt to shield itself from TCPA liability by interjecting agency principles into the statute is inappropriate.  Where, as here, the caller has obfuscated its name, phone number, or identity, it should not fall to the aggrieved consumer or to law enforcement agencies to try to discern the

identity of such callers.  The burden of preventing violative calls in the first instance should be on the seller, Profinity, who stands to benefit from the telemarketing conduct, rather than on the consumer harmed by that conduct.  The seller is in the best position to investigate and police its dealers' conduct.

**D.     The Proper Balance is to Place Liability on Profinity**

There is no end to the creative arguments that well-financed defendants, such as Profinity, will make to circumvent the TCPA.  Defendants' anticipated counter-argument  – that vicarious liability makes little sense when Profinity supposedly did all it could to prevent MDM from sending illegal texts – does not exonerate Profinity.[8]

First, this factor is irrelevant to TCPA liability.  Profinity is liable under the TCPA, even if it did not physically dial the call.  The TCPA is a strict liability statute.  If Defendants do not agree, they should lobby Congress to change the law.

Moreover, the correct balance is to place liability on the seller who benefits from the practice and is in the best position to police and prevent it.  This properly incentivizes the seller to use  only reputable marketers, to take proper steps to ensure that illegal texts are not being sent and to make certain that any party selling its services or products adheres to the TCPA's prescriptions.  If illegal texts were sent, that is proof that sellers monitoring efforts were inadequate.  The seller is not without recourse.  In such instances, the seller always can rely on its contract with its vendor to be indemnified or made whole by any breach by the marketer that created TCPA liability.  Holding the seller vicariously liable also will avoid the situations of efficacious breach and plausible deniability, whereby marketers breach the contract by using illegal marketing and the sellers hide behind them are happy to live with the breach (if it is not

---

[8]Whether or not Profinity, in fact, did all it could, is one of the triable issues of fact for which Plaintiff seeks discovery pursuant to Fed. R. Civ. P. 56(d).

exposed) because it benefits the sellers.

## IV.   DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED OR PLAINTIFFS SHOULD BE PERMITTED TO AMEND

In a cursory alternative argument, Defendants seek to dismiss Plaintiff's initial Complaint.  However, Defendants provide no sufficient legal argument for dismissal.  In the event that the Court may be inclined to grant Defendants' Motion, Plaintiff respectfully requests leave to file an amended complaint.  As provided by Fed. R. Civ. P. 15(a)(2), leave to amend should be freely granted "when justice so requires."  It is well established that leave to amend should be "freely given" in the absence of any reason to the contrary, such as bad faith or undue prejudice, none of which are raised by Defendants because none are present here.  *Foman v. Davis*, 371 U.S. 178, 183 (1962).  The refusal to grant leave to amend without any justifying reason "is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."  *Id*. at 182.  Leave to amend is particularly appropriate here, as Defendants' Motion challenges Plaintiff's original pleading and there have been no prior amendments to the Complaint.

### A.   Plaintiff's Complaint Adequately States a Claim for Violation of the TCPA

Contrary to Defendants' assertion (Motion at 10), the Complaint satisfies the controlling pleading standards.  First, Plaintiff's well-pled allegations are assumed to be true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1965 (2007).  *Twombly* then imposes two easy-to-clear hurdles: plaintiff must provide fair notice to defendants of plaintiff's claims, and plaintiff must plausibly suggest that plaintiff has a right to relief which rises above a "speculative level."  127 S. Ct. at 1964-1965.

Plaintiff's Complaint satisfies these requirements.  Plaintiff alleges that Defendants made

11

an unsolicited call sending a text message to Plaintiff's cellular phone (¶¶16-18) in violation of the TCPA (¶¶1, 4, 19-25, 39-44) and seeks an award of damages for violation of the statute (¶¶1, 40-41, 43-44, Prayer) on behalf of Plaintiff and a class of similarly situated persons.  ¶¶2-3, 26-37.  Plaintiff also alleges in detail the date, sender and content of the text message (¶¶16-18), how transmission of the text message violated the TCPA (¶¶19-25) and the damages Plaintiff and the class seek.  ¶¶1, 40-41, 43-44, Prayer.  Accordingly, Plaintiff has provided Defendants with fair notice of her claims and alleges a right to relief far above a "speculative level."  No more is required, particularly at this stage of the litigation and before discovery has commenced.  In the event that the Court should find any deficiencies in the pleadings, the proper remedy is to permit Plaintiff leave to amend.

### B.        Leave to Amend is Appropriate, if Necessary

Plaintiff's Complaint identifies the roles of each Defendant in the alleged conduct (¶¶6-12, 16-18), alleges that Defendants acted in concert (¶¶1, 4, 19-25) and therefore puts each Defendant properly on notice of Plaintiff's claims.  In arguing that the Complaint must be dismissed for purportedly "lumping together defendants" (Motion at 9-10), Defendants rely solely on *Bentley v. Bank of America, N.A.*, 773 F. Supp. 2d 1367 (S.D. Fla. 2011). Nevertheless, *Bentley* proves Plaintiff's point, not Defendants'.  In *Bentley*, the plaintiff had filed two prior complaints, and the pending motion was directed to plaintiff's second amended complaint.  *Id.*, at 1369.  Even so, the trial court granted plaintiff leave to file a third amended complaint.  *Id.*, at 1376.  Here, Defendants move to dismiss Plaintiff's *initial* complaint and Plaintiff has not previously sought to leave to amend.  If anything, *Bentley* stands for the fact that under Fed. R. Civ. P. 15(a)(2), this Court should grant Plaintiff leave to file an amended complaint to correct any perceived deficiencies in the pleading.

Plaintiff's allegations regarding the matter in controversy justify this Court's subject

matter, and Defendants have provided no contrary authority.  In asserting that Plaintiff's class

size allegations class are inadequate, Defendants rely only on *C&E, Inc. v. Friedman's*

*Jewelers, Inc.*, 2008 U.S. Dist. LEXIS 561 (S.D. Ga. Jan. 4, 2008) and *Lowery v. Alabama*

*Power Co.*, 483 F.3d 1184 (11th Cir. 2007), which concern remand and removal of CAFA

actions, respectively.  However, Defendants fail to make any analogy between the standards

applicable on remand and removal, and the pleading standards on a motion to dismiss, nor can

any analogy be drawn.  Whereas a removing party bears the burden of establishing the

jurisdictional amount by a preponderance of the *evidence* (*id*., at 1209-1211)[9], a party opposing

a motion to dismiss for lack of the jurisdictional minimum need only allege the amount in

controversy in good faith.  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288

(1938) ("[t]he rule governing dismissal for want of jurisdiction in cases brought in the federal

court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the

claim is apparently made in good faith."), *superseded by statute on other grounds*.

  Here, the Complaint unambiguously alleges in good faith that "the claims of individual

class members in this action are well in excess of $5,000,000 in the aggregate, exclusive of

interest and costs, and that the total number of members of the proposed Class is greater than

100, as required by 28 U.S.C. §1332(d)(2), (5)."  ¶3.

  Defendants seeking to dismiss for lack of subject matter jurisdiction bear the burden of

showing "to a legal certainty that the claim is really for less than the jurisdictional amount to

justify dismissal."  *St. Paul Mercury Indem. Co.*, 303 U.S. at 289.  Defendants' statement that

---

[9]Defendants omit that controlling Eleventh Circuit case law has clarified that removal is a fact-intensive inquiry, and that a defendant may submit a wide range of summary judgment-type evidence on removal, including declarations of counsel and affidavits of experts.  *See Pretka v. Kolter City Plaza II, Inc*., 608 F.3d 744, 754-755 (11th Cir. 2010).

"The Complaint is as consistent with the conclusion that the damages of the purported class is less than $5 million as the Complaint is consistent with the idea that the damages of the class exceed $5 million" makes no showing whatsoever that the jurisdictional minimum is not met, but rather appears to misplace the burden of proof at this pre-discovery stage of the litigation squarely upon Plaintiff.  *See, e.g., Barrett v. Lombardi*, 239 F.3d 23, 30-31 (1st Cir. 2001) ("In an amount-in-controversy case, however, all the plaintiff must do to carry this burden in the face of a motion to dismiss is  to set forth facts which, if true, would prevent the trier from concluding to a legal certainty that the potential recovery is capped at a figure below the jurisdictional minimum.").

V.      **CONCLUSION**

For the foregoing reasons, Defendants' Motion should be denied.

Respectfully submitted,

Dated: December 12, 2011          LAW OFFICES OF STEFAN COLEMAN, PLLC
                                  Stefan Coleman (Florida Bar # 0030188)


                    By:    /s/ Stefan Coleman_____
                              Stefan Coleman
                          1072 Madison Ave, Suite 1,
                          Lakewood, NJ  08701
                          Telephone:   (877) 333-9427
                          Facsimile:    (888) 498-8946
                          Email: law@stefancoleman.com

                          Of Counsel:

                          WEISS & LURIE
                          Jordan L. Lurie  (jlurie@weisslurie.com)
                          Joel E. Elkins (jelkins@weisslurie.com)
                          10940 Wilshire Blvd., 23rd Floor
                          Los Angeles, CA  90024
                          Telephone:   (310) 208-2800

                          Attorneys for Plaintiff and the Proposed Class